Honorable Frederick P. Corbit
Chapter 11

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>LLS AMERICA, LLC,<br><br>Debtors.[1] | No. 09-06194-FPC11<br><br>SUPPLEMENT TO TRUSTEE'S OPPOSITION TO MOTION FOR LEAVE TO FILE CLAIMS AGAINST THE LIQUIDATING TRUSTEE AND TRUSTEE'S ATTORNEYS OUTSIDE OF BANKRUPTCY COURT |

Attached hereto is Appendix A to the Trustee's Opposition to Motion for Leave to File Claims Against the Liquidating Trustee and Trustee's Attorneys Outside of Bankruptcy Court (the "Opposition") which inadvertently was not attached to the Opposition filed on December 15, 2022.

Dated December 16, 2022.

/s/ Michael E. Gossler
Michael E. Gossler, WSBA No.11044
MONTGOMERY PURDUE PLLC
701 5th Avenue, Suite 5500
Seattle, WA 98104
Phone: 206-682-7090
mgossler@montgomerypurdue.com
Attorneys for Trustee

---

[1] Please refer to the Order Granting Trustee's Motion for Substantive Consolidation (ECF No. 771) for the list of debtor entities.

SUPPLEMENT TO TRUSTEE'S OPPOSITION TO MOTION FOR LEAVE TO FILE CLAIMS AGAINST THE LIQUIDATING TRUSTEE AND TRUSTEE'S ATTORNEYS OUTSIDE OF BANKRUPTCY COURT - 1
{19581/001/03046870-1}

MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

09-06194-FPC11    Doc 2310    Filed 12/16/22    Entered 12/16/22 09:10:52    Pg 1 of 10

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2022, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. Parties may access this filing through the Court's CM/ECF system.

DATED this 16th day of December, 2022.

*/s/ Lisa J Hanlon*
Lisa Hanlon

SUPPLEMENT TO TRUSTEE'S OPPOSITION TO MOTION FOR LEAVE TO FILE CLAIMS AGAINST THE LIQUIDATING TRUSTEE AND TRUSTEE'S ATTORNEYS OUTSIDE OF BANKRUPTCY COURT - 2
{19581/001/03046870-1}

Montgomery Purdue PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

# APPENDIX A

KeyCite Yellow Flag - Negative Treatment
Distinguished by Mandelas v. Gordon, W.D.Wash., March 31, 2011

159 Wash.App. 1045

NOTE: UNPUBLISHED OPINION, SEE WA R GEN GR 14.1

Court of Appeals of Washington, Division 1.

Brent CARTER, a natural person; and Oak Harbor Chiropractic Health Centers, PS, a Washington professional services corporation, Appellants,
v.
SUTTELL & ASSOCIATES, PS d.b.a Suttell & Associates; Citi USA aka CitiUSA, An Unknown Entity; Citigroup Inc. a regular corporation and its wholly owned subsidiaries Citibank South Dakota, a national banking association; and Citicorp Credit Services, Inc. (USA), a regular corporation, Respondents.

No. 63628–6–I.
|
Jan. 13, 2011.

Appeal from King County Superior Court; Hon. Christopher A. Washington, J.

**Attorneys and Law Firms**

Jason Ellis Anderson, Attorney at Law, Seattle, WA, for Appellant.

Joel Evans Wright, Marc Rosenberg, Lee Smart PS Inc., William Roger Kiendl, Smith Freed & Eberhard P.C., Mark a Horey, Law Office of Mark A. Horey, PLLC., Seattle, WA, Kathryn P. Salyer, Farleigh Wada Witt, Portland, OR, for Respondent.

UNPUBLISHED OPINION

APPELWICK, J.

*1 On behalf of its client Citibank South Dakota, the law firm Suttell & Associates obtained a judgment and filed a writ of garnishment against Carter, resulting from a defaulted credit card debt. Three years later, Carter sued various entities of Citibank, as well as the law firm Suttell, over allegedly unfair and deceptive actions undertaken during the debt collection. Carter alleged that the defendants violated Washington's Consumer Protection Act (CPA), chapter 19.86 RCW, and Washington's Collection Agency Act (WCM), chapter 19.16 RCW. He also alleged abuse of process and unlawful garnishment. The trial court granted a default dismissal in favor of the Citibank entities and granted summary judgment in favor of Suttell. Carter appeals both decisions. Because Carter fails to prove grounds for relief from the default judgment in favor of the Citibank entities, the trial court properly dismissed those claims and we affirm that dismissal. But, because material issues of fact exist regarding the validity of Oak Harbor Chiropractic's claim against Suttell, we reverse the summary judgment as to Suttell and remand for further proceedings.

FACTS

This lawsuit derives from a garnishment action seeking payment of a judgment obtained in a collection action. The debt at issue arose from Carter's default on a credit card. Citibank South Dakota NA retained Citicorp Credit Services, inc. (both wholly owned subsidiaries of Citigroup, Inc.) to collect the debts. Citibank South Dakota also retained Suttell & Associates,[1] a law firm, to represent it in an action to collect the debts. Suttell filed a complaint in Island County Superior Court in February 2004 and obtained a judgment, including attorney fees, against Carter in October 2004.[2] Suttell then filed applications for writs of garnishment to collect the judgment amount in November and December 2004, seeking to garnish two separate bank accounts. The first account was with Pacific Northwest Bank (now Wells Fargo). Carter argues that account should have been exempt from garnishment since it contained less than $200. The second account was with Bank of America. Carter asserts that this account was not under his name, but was a corporate account held by Oak Harbor Chiropractic Health Center, PS.

Suttell attorneys Catherine M. Kelley and William G. Suttell submitted two declarations supporting the writs of garnishment. The court issued the writs of garnishment in November and December 2004. Suttell filed a release of writ of garnishment to garnishee Pacific Northwest Bank

on December 23, 2004. However, the record contains no such release for the Bank of America account, and Carter argues that both he and Oak Harbor continued to suffer harms including bounced checks and bank fees into January 2005. Suttell filed a full satisfaction of judgment on January 18, 2005. Carter paid the judgment in March or April, 2005.

On December 31, 2007, Carter filed a lawsuit pro se on behalf of himself and Oak Harbor against Suttell, Citibank South Dakota, Citicorp Credit Services, and other related entities (collectively "Citi defendants"). Carter argued that the defendants used unfair practices, including abuse of the garnishment process, to harass Carter into paying his judgment. In addition to abuse of process, Carter alleged wrongful garnishment, and violations of the WCAA and the CPA. Carter alleged that Suttell wrongfully filed the writs of garnishment merely to pressure him to pay the judgments against him or in hopes that he would not contest the writs. Carter further alleged that the two declarations filed by Suttell attorneys were false and misleading in that they wrongfully asserted that the attorneys had reason to believe the garnishees had personal property that was eligible for garnishment when in fact both accounts were exempt from garnishment.

**\*2** On February 15, 2008, the court granted a CR 12 default dismissal of the claim against the Citi defendants and denied Carter's subsequent motion to vacate that default judgment. The trial court also granted summary judgment in favor of Suttell.

Carter appeals.

DISCUSSION

I. *Default Judgment for Citi Defendants*
Carter contends that the trial court erred in entering a default judgment dismissing the Citi defendants, because that order arose out of unfair procedural irregularities. He argues that the Citi defendants prematurely appeared and made their motion to dismiss before he had properly served them. He also argues that he did not discover the Citi defendants' CR 12 motion in time to respond to it.

These arguments are unpersuasive. Carter named the Citi defendants in his complaint filed on December 31, 2007. He did not formally serve the Citi defendants until almost two months later, on February, 29, 2008. Nevertheless, the Citi defendants received actual notice of the suit much sooner than that. The Citi defendants filed their motion to dismiss on January 25, 2008, and served that motion shortly thereafter on Carter by mailing it to the address he had provided in his complaint. Carter failed to respond to the motion or appear at the hearing. No court rule or other law requires that a named party to a lawsuit wait for formal service before responding. As defendants named in Carter's complaint, the Citi defendants were entitled to respond once they had actual notice of the suit. Carter's unsupported assertion fails. The trial court did not err in granting a default under CR 55 when Carter failed to respond or appear; the court properly granted the dismissal of the claim against Citi defendants pursuant to the pending CR 12 motion.

II. *Motion to Vacate the Default Judgment*
Carter argues that the trial court abused its discretion in failing to vacate the default dismissal under CR 60 and *White v. Holm*, 73 Wn.2d 348, 438 P.2d 581 (1968). A trial court's decision on a motion to vacate a default judgment will not be disturbed on appeal unless the trial court has abused its discretion. *Morin v. Burris,* 160 Wn.2d 745, 753, 161 P.3d 956 (2007); *In re Estate of Stevens,* 94 Wn.App. 20, 29, 971 P.2d 58 (1999). Discretion is abused if exercised on untenable grounds or for untenable reasons. *Morin,* 160 Wn.2d at 753. A trial court can vacate an order of default for good cause. CR 55(c)(1); *Seek Sys., Inc. v. Lincoln Moving/Global Van Lines, Inc.,* 63 Wn.App. 266, 271, 818 P.2d 618 (1991). Courts consider excusable neglect and due diligence as factors in considering "good cause." *Lincoln Moving,* 63 Wn.App. at 271. Default judgments are generally not favored. *See, e .g., Griffith v. City of Bellevue,* 130 Wn.2d 189, 192, 992 P.2d 83 (1996).

A party may seek relief from an adverse order under CR 60(b), which provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> **\*3** (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
>
> ....
>
> The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.

In *White,* the Supreme Court set out four factors the moving party must demonstrate in order to have a default judgment set aside:

> (1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occaisioned by mistake, inadvertence, surprise, or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party.

73 Wn.2d at 352. The first two factors are the principal considerations, while the third and fourth factors are secondary. *Id.* The trial court concluded that Carter failed to meet his burden under the second and third factors, since he lacked a reasonable excuse for his untimely response and failed to act with due diligence after notice of the default judgment. We agree.

A motion under CR 60(b) must be filed within a "reasonable time", and in no case more than one year after judgment is taken. *Luckett v. Boeing Co.,* 98 Wn.App. 307, 312, 989 P.2d 1144 (1999). What constitutes a "reasonable time" depends on the facts and circumstances of each case. *Id.* Major considerations in determining a motion's timeliness are: (1) prejudice to the nonmoving party due to the delay; and (2) whether the moving party has good reasons for failing to take appropriate action sooner. *Id.*

Carter does not prove that his failure to respond constitutes "excusable neglect" under CR 60(b)(1) and the second *White* factor. He argues that he has lived outside the United States since October 2007 and returns infrequently to San Antonio, Texas to check his mail. He claims that he had left the country shortly after filing the complaint and that he had made arrangements for an attorney, Jason Anderson, to appear in the case after all of the defendants were formally served. Carter served the Citi defendants on February 29, 2008. Yet, Anderson did not appear on Carter's behalf until July 23, 2008. Carter's failure to check his mail or stay appraised of the status of the litigation he initiated does not constitute "excusable neglect." This is not a case of a defendant's failure to respond to a complaint. Here, Carter, as the plaintiff, had every reason to know of the possibility that action might be taken on his lawsuit once he filed it. Considering the length of the delay and the absence of a reasonable excuse, Carter did not bring his motion within a reasonable time.

Carter also fails to establish that he acted with due diligence under the third *White* factor. Here, the Citi defendants filed their answer and motion to dismiss on January 25, 2008, and served that motion on Carter by mail to his Texas address. The court heard the motion on February 15, 2008. Carter did not file his motion to vacate until August 21, 2008, more than six months after the default judgment was entered. He asserts he did not learn of the default against him until late May 2008, upon returning to the country and checking his mail. Carter did not monitor the docket or implement procedures to have his mail checked or forwarded. This neglect explains why he did not promptly know of the default order against him, but it does not justify his failure to respond promptly. He did not exercise due diligence in responding to entry of the default order. Carter argues that due diligence has not been questioned in cases where the one year deadline of CR 60 is met. However, this deadline is merely an extreme outer limit for seeking relief. *Luckett,* 98 Wn.App. at 312.

**\*4** The trial court's conclusions under the *White* test are supported by the decision in *Luckett.* There, Luckett's attorney waited four months before filing a motion to vacate a dismissal order. *Luckett,* 98 Wn.App. at 313. Although no prejudice from the delay had been shown, the court concluded that the motion was not filed within a reasonable time, because Luckett had shown no good reason for the delay. *Id.* Here, there is a lengthier delay and a similarly insufficient excuse. The *Luckett* court recognized that there is a general preference for resolving cases on their merits, but concluded that the timely pursuit of available remedies is generally a prerequisite to application of that preference. *Id.* at 313–14.

The trial court concluded that, in light of Carter's failure to meet the requirements of CR 60(b) and the second and the third elements of the *White* test, it would not vacate the default judgment. Because it was Carter's burden as the moving party to demonstrate that he had met all four of the *White* factors, the trial court's decision was reasonable and proper. A trial court's decision on a motion to vacate a default judgment will not be disturbed on appeal unless the trial court has abused its discretion. *Morin,* 160 Wn.2d at 753. The trial court did not abuse its discretion here. We affirm the default judgment.

Because Carter has not successfully challenged the dismissal order and because the trial court did not abuse its discretion in declining to vacate that order, we need not reach Carter's additional arguments regarding the merits of the defenses raised by the Citi defendants in the CR 12 motion to dismiss.

III. *Summary Judgment in Favor of Suttell*

Carter also argues on appeal that the trial court erred in granting Suttell's motion for summary judgment. Suttell moved for summary judgment on all claims, arguing the following: that it was exempt from the WCAA, because it was not a "collection agency;" that Carter's WCAA claims, wrongful garnishment claims, and abuse of process claims were all time barred; and that claims of negligence or malpractice against a professional cannot be brought under the CPA. Based on the prior Island County proceedings, Suttell also argued that Carter's claims should be barred by the doctrines of res judicata, laches, and waiver. The trial court granted Suttell's motion for summary judgment.

A motion for summary judgment presents a question of law reviewed de novo. *Osborn v. Mason Cnty.*, 157 Wn.2d 18, 22, 134 P.3d 197 (2006). A trial court grants summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). We construe the evidence in the light most favorable to the nonmoving party. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). We review a ruling on a motion for summary judgment based solely on the record before the trial court at the time of the motion for summary judgment. RAP 9.12; *Wash. Fed'n of State Emps., Council 28 v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 163, 849 P.2d 1201 (1993). An adverse party may not rest upon mere allegations or denials, but must instead set forth specific facts showing the existence of a genuine issue for trial. *McBride v. Walla Walla Cnty.*, 95 Wn.App. 33, 36, 975 P.2d 1029, 990 P.2d 967 (1999); CR 56(e). We review Suttell's arguments raised as to each claim to determine whether the trial court properly dismissed the claims.

A. *Consumer Protection Act Claims*

\*5 Suttell argued at summary judgment that it was exempt from the CPA. To establish a CPA violation, Carter must prove five elements: (1) an unfair or deceptive act or practice that (2) occurs in trade or commerce, (3) impacts the public interest, (4) and causes injury to the plaintiff in his business or property, and (5) the injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). A plaintiff alleging injury under the CPA must establish all five elements. *Id.* The CPA should be liberally construed. *Salois v. Mut. of Omaha Ins. Co.*, 90 Wn.2d 355, 358, 581 P.2d 1349 (1978).

Claims directed to the competence of, or strategy employed by, lawyers amount to allegations of negligence or malpractice and are exempt from the CPA. *Michael v. Mosquera–Lacy*, 165 Wn.2d 595, 603, 200 P.3d 695 (2009); *Short v. Demopolis*, 103 Wn.2d 52, 61–62, 691 P.2d 163 (1984). Only certain of the entrepreneurial aspects of the practice of law may fall within the "trade or commerce" definition of the CPA. *Mosquera–Lacy*, 165 Wn.2d at 603. The entrepreneurial aspects of the legal practice include (1) how the price of legal services is determined and (2) the way a law firm obtains, retains, and dismisses clients. *Quinn v. Connelly*, 63 Wn.App. 733, 742, 821 P.2d 1256 (1992).

The trial court found that Carter's claims against Suttell should be dismissed under the rule in *Mosquera–Lacy*. Carter contended at the trial court level that the actions taken by Suttell were "entrepreneurial," because they would obtain fees as a result. But, the actions taken by Suttell against Carter, an adverse party, were not entrepreneurial. The Supreme Court recently discussed this in the context of the CPA:

> CCS raises the specter of CPA claims filed against attorneys who send demand letters on behalf of their clients. The United States Supreme Court brushed aside similar concerns in deciding the FDCPA [Federal Debt Collection Act, 15 U.S.C. § 1692] applies to attorneys who regularly engage in debt collection. *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). The Court's rejection of a litigation exception to the FDCPA prevents regulated entities from evading regulation by conscripting lawyers to accomplish indirectly what they may not do directly. Attorneys who engage in bona fide collection activities on behalf of their clients have no need to fear suit. Moreover, this court has concluded that the CPA has no application to the performance of legal services. *See* [*Mosquera–Lacy*, 165 Wn.2d at 595]; *Short*, 103 Wn.2d at 61 (CPA applies only to entrepreneurial aspects of legal practice such [as] setting price of legal services, billing and collection, and obtaining, retaining, and dismissing clients).

*Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 56 n. 14, 65, 204 P.3d 885 (2009) (holding that the CPA applied to collection practices used to pursue the subrogation claim of an insurance company). Merely obtaining fees, either through the judicial process or the process of billing a client, for the services rendered does not convert those services into "entrepreneurial" actions within the meaning of *Short* and *Mosquera–Lacy*. To so hold would allow the exception to swallow the rule, such that any service rendered for profit

would become subject to the CPA. This is contrary to the rule of those cases.

*6 Under *Short* and *Mosquera–Lacy,* there can be no claim under the CPA as a matter of law for the actions taken by Suttell against Carter. The trial court properly dismissed Carter's CPA claims against Suttell on summary judgment.[3]

B. *Washington's Collection Agency Act Claims*

The WCAA's definition of "collection agency" includes, but is not limited to, "[a]ny person directly or indirectly engaged in soliciting claims for collection, *or* collecting or attempting to collect claims owed or due or asserted to be owed or due another person." RCW 19.16.100(2)(a). "Collection agency" does not include:

> [a]ny person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to: ... lawyers.

RCW 19.16.100(3)(c);[4] *see also Trust Fund Services v. Aro Glass Co.,* 89 Wn.2d 758, 761–62, 575 P.2d 716 (1978) (holding that law firm's alter ego, Trust Fund Services, designed to allow a law firm to collect debts related to the firm's business, fell within the exemption for lawyers under RCW 19.16.100(3)(c)). Suttell argued that it was a law firm hired by Citibank to collect a debt from Carter and was therefore exempt from the WCAA.

Carter argues that the exemption for lawyers does not apply here because Suttell's sole business is to collect debts. But, the record supporting this argument is unpersuasive. Carter's attorney Jason Anderson filed a declaration in support of Carter's opposition to the motion for summary judgment stating that "The bulk of my practice involves bankruptcy work. During the course of this work over the past six years I have found that literally all Citibank collection accounts that proceed to litigation [are] handled by Suttell & Associates." He then attached as an exhibit a print out of all the cases involving Citibank in Superior Court, which he asserts without evidence were "almost all" handled by Suttell. Carter also asserted in his response to Suttell's motion for summary judgment that Suttell, "while managed by an attorney, employs numerous employees that engage in collections work." Carter put forth no evidence in support of this claim. These assertions by Carter's counsel are not sufficient to prove that Suttell is a collection agency.

Carter also alleges that Suttell admitted that it was a collection agency on its stationery. Carter submitted letters written by Dennis Nissen, a nonlawyer employee of Suttell, as evidence that Suttell acted as a collection agency. The letters, sent to Carter seeking to obtain payment for the judgments filed against him, stated, "We are debt collectors. This communication is an attempt to collect a debt and any information obtained will be used for that purpose." The stationery included a line after the name and address that stated, "We are debt collectors. Any information obtained will be used for that purpose." It is signed by Dennis Nissen, "Collections Manager."

*7 These warning messages effect compliance with the federal FDCPA. The FDCPA prevents a debt collector from using false, deceptive, or misleading representation in connection with the collection of any debt. 15 U.S.C. § 1692e. But, the FDCPA contains a different definition of "debt collector" than the WCAA's definition of "collection agency." Specifically, the FDCPA does not exclude attorneys. 15 U.S.C. § 1692a(6); *see also Heintz,* 514 U.S. at 299 (holding that the FDCPA applies to attorneys whether they are engaged in litigation or out-of-court methods of collecting). The fact that Suttell may be a "debt collector" under the FDCPA does not render it a "collection agency" under the WCAA. Carter makes no claims based on any violation of the FDCPA.

The only evidence remaining that Suttell acted as a collection agency under state law are the actions taken by the lawyers in this case. From the record, it is clear that Suttell represented Citibank South Dakota in litigation to pursue Carter's debt. Suttell filed a complaint and obtained a judgment against Carter for the amount owed on his credit card, sent letters to Carter encouraging him to pay the judgment or be subject to garnishment, and filed applications for writs of garnishment, including filing supportive declarations. Suttell acted on behalf of Citibank, not as an assignee or otherwise in its own right.

The fact that the activities Carter complains of constituted litigation does not prevent Suttell from falling within the definition of a collection agency. This issue arose in *Evergreen Collectors v. Holt,* 60 Wn.App. 151, 155–56, 803 P.2d 10 (1991).[5] In that case, the Supreme Court discussed *Blake v. Federal Way Cycle Center,* 40 Wn.App. 302, 312, 698 P.2d 578 (1985), which held that actions occurring after the filing of a lawsuit did not fall within the sphere of trade or commerce and therefore were not covered by the

CPA. *Evergreen Collectors,* 60 Wn.App. at 155–56. The *Evergreen* court rejected that holding in the context of the WCAA, stating, "In light of the [WCAA's] clear intention to bring collection agency activities within the coverage of the [CPA], it would be ludicrous to hold that an agency's tactics after filing suit are exempt from such coverage." *Evergreen Collectors,* 60 Wn.App. at 156–57.

It is clear that some lawyers may fall within the definition of "collection agency." RCW 19.16.100(3)(c) does not entirely exclude lawyers from ever qualifying as a "collection agency." It merely excludes those who are collecting debts "directly related to the operation of a business other than that of a collection agency." RCW 19.16.100(3)(c). Also, RCW 19.16.120(4)(b) states that having a license to practice law suspended or revoked constitutes unprofessional conduct under the WCAA. This indicates that the WCAA contemplates that lawyers may act as collection agencies.

But, to hold that merely engaging in litigation related to the collection of debts on behalf of a client meets the statutory definition would essentially render every law firm taking part in collection litigation a "collection agency." Such a result is not what the statute compels.

**\*8** Mere assertions generally will not allow a party to survive summary judgment. Carter was required to set forth specific facts showing the existence of a genuine issue for trial. *McBride,* 95 Wn.App. at 36; CR 56(e). If Suttell indeed was acting as a collection agency, Carter failed to put forth sufficient evidence to reveal an issue of material fact. Carter's bare assertions are not enough to prevent summary judgment. On the record before the trial court, the evidence is that Suttell represented its client in the practice of law. It was not acting as a collection agency. We hold that the trial court properly granted summary judgment for Suttell based on Carter's claims under the WCAA.

C. *Tort Claims*
Suttell argues that the remaining tort claims of wrongful garnishment and abuse of process arising from the writs of garnishment on the two bank accounts were properly dismissed, because Carter did not timely raise them. Tort claims have a three year statute of limitations. RCW 4.16.080. Carter filed his lawsuit on December 31, 2007. The parties here disagree as to what date the limitations period began to run.

Suttell argues that the statute of limitations period began to run when the writs of garnishment were first filed on the two bank accounts: on November 18, 2004, for the Pacific Northwest Bank account and on December 1, 2004, for the Bank of America account. Suttell contends that the statute of limitations began to run when Carter knew or should have known the facts giving rise to his cause of action. Carter responds that both he and Oak Harbor continued to suffer harm from the allegedly improper garnishments during January 2005, less than three years prior to the suit. He contends that the suit was timely because the torts continued up until January 18, 2005, the date that the holds were removed and the satisfaction of judgment was filed.

Generally, the limitations period begins to accrue when the plaintiff has the right to seek legal relief. *Cawdry v. Hanson Baker Ludlow Drumheller, PS,* 129 Wn. App 810, 816, 120 P.3d 605 (2005). However, Washington recognizes the theory of continuing torts. *Pac. Sound Res. v. Burlington N. Santa Fe Ry. Corp.,* 130 Wn. App 926, 941, 125 P.3d 981 (2005). When a tort is continuing, the statute of limitations runs from the date each successive cause of action accrues as manifested by actual and substantial damages. *Id.* Here, Carter alleges two separate tort claims: abuse of process and wrongful garnishment.

1. *Abuse of Process Claims*
The abuse of process claims arise from the declarations Suttell filed alleging the bank accounts were subject to garnishment. Carter argues that the bank accounts were exempt from garnishment. However, we do not reach the merits of Carter's abuse of process claims. If abuse of process occurred, it occurred when the declarations in support of the two writs of garnishment were filed on November 10 and December 1, 2004. It was not repeated. Accordingly, the abuse of process claims arise from harm that occurred more than three years before Carter filed his suit. These claims are untimely.

2. *Wrongful Garnishment Claims*
**\*9** We next consider Carter's wrongful garnishment claim and look to whether the statute of limitations has run for each bank account. Suttell first filed a declaration for garnishment against Carter's Pacific Northwest Bank account on November 18, 2004. It then obtained a writ of garnishment against that account on the same day. However, on December 23, 2004, for reasons unspecified in the trial court record, Suttell filed a release of the writ of garnishment against Pacific Northwest Bank. Any continuing tort ended on the

date Suttell released the writ. Carter puts forth no evidence of damages occurring after that date. Since he filed his complaint more than three years after Suttell's release, Carter's claim as to the Pacific Northwest Bank account is untimely, and the trial court properly dismissed it.

We turn next to the second garnished bank account at Bank of America. Suttell filed the declaration of garnishment against that account on November 29, 2004, and obtained the writ of garnishment on December 1, 2004. Unlike the Pacific Northwest Bank account, there is no release of writ of garnishment in the record for this Bank of America account. And, there is nothing in the record to refute Carter's allegation that Oak Harbor continued to experience damages up until Suttell filed the full satisfaction of judgment on January 18, 2005. The statute of limitations ran from the last of the successive harms Oak Harbor experienced in January 2005. Its wrongful garnishment tort claim filed on December 31, 2007 was timely. Accordingly, the trial court erred in granting summary judgment in favor of Suttell.

Suttell argues for the first time on appeal that Oak Harbor may not maintain an action since the corporation was administratively dissolved before the complaint was filed. Generally, issues not raised at the trial court may not be raised for the first time on appeal. RAP 2.5(a). Because this was not raised below,[6] there is no evidence in the record on appeal as to the administrative dissolution. Although Suttell included information regarding the dissolution in an appendix to its appellate brief and at oral argument, this does not meet the strict requirements of RAP 9.11 and may not be incorporated into the record. There is inadequate evidence in the trial court record to make this determination. Accordingly, we remand to the trial court for further proceedings on Oak Harbor's claim.

We affirm in part, and reverse and remand in part.

WE CONCUR: COX and BECKER, JJ.

**All Citations**

Not Reported in P.3d, 159 Wash.App. 1045, 2011 WL 396038

---

Footnotes

1    Suttell has subsequently been renamed Suttell & Hammer, PS. This change has no impact on the issues raised here.

2    Another judgment was obtained in a separate matter regarding the same parties (resulting from a separate credit card, apparently). Carter did not challenge the separate action in his complaint.

3    Carter attempts to import the federal definition of "debt collector" from *Heintz,* 514 U.S. at 291, to find an exception to *Mosquera–Lacy* for an attorney who "regularly" engages in debt collection activity. This is unpersuasive. The rule in *Mosquera–Lacy* and *Short* (and discussed in *Panag*) analyzes each activity undertaken by the attorney to determine whether that specific activity is covered. *Mosquera–Lacy,* 165 Wn .2d at 603; *Short,* 103 Wn.2d 52 at 61–62. Whether the attorney "regularly" does anything is irrelevant. Also, Carter fails to prove his assertion that "Suttell and Associates have no 'business other than that of a collection agency.' "

4    Suttell incorrectly cited RCW 19.16.010(3)(c), a statutory provision that has been repealed, at summary judgment when it attempted to claim that it was exempt under RCW 19.16.100(3)(c). But, Carter had sufficient notice of the correct provision, as Suttell quoted RCW 19.16.100(3)(c) in its motion (and simply mislabeled the RCW). The error did not prejudice Carter's ability to respond; therefore it will not impact Suttell's arguments on appeal.

5    Although *Evergreen Collectors* was decided in 1991, it was cited with approval in 2009 by our Supreme Court for the proposition that a violation of WCAA is a per se violation of the CPA. *Panag,* 166 Wn.2d at 53.

6    In its reply in support of its motion for summary judgment, Suttell briefly mentioned, without citation or support for its claim, that Oak Harbor had been administratively dissolved. This is insufficient to consider the issue raised before the trial court.

End of Document                                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.