**So Ordered.**

**Dated: February 27th, 2023**



**Frederick P. Corbit**
**Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Case No.      09-06194-FPC 11 |
| LLS AMERICA, LLC, et al., | |
| | ORDER DENYING MOTION FOR LEAVE TO FILE CLAIMS AGAINST THE LIQUIDATING TRUSTEE AND TRUSTEE'S ATTORNEYS OUTSIDE THE BANKRUPTCY COURT |
| Debtors.[1] | |

THIS MATTER came before the Court on the Motion of Ronald Ponton and Tomika Ponton (the "Pontons"). (ECF No. 2298) The Pontons seek leave to sue Mr. Bruce Kriegman, in his capacity as liquidating trustee of the LLS America, LLC, Liquidating Trust (the "Trustee") and the law firms of Green & Norwood, PLLC ("Green & Norwood") and Witherspoon, Kelley, Davenport & Toole, P.S. ("Witherspoon Kelley") in the United States District Court for the Western District of Washington for claims under the Washington Consumer Protection Act, RCW 19.86 *et. seq.*, based on alleged violations of the Washington Collection Agency Act, RCW 19.16 *et. seq.*, and for abuse of process. (ECF No. 2298) The Trustee objected to the Motion (ECF No. 2313), and the matter was set for hearing. On January 25, 2023, the Court heard oral arguments and took the matter under

---

[1] The Debtor's related entities were substantively consolidated into the Debtor's case pursuant to the Order Granting Trustee's Motion for Substantive Consolidation, Etc. (ECF No. 771), entered on September 8, 2011. All references hereafter to the "Debtor" include, collectively, the related entities consolidated into the Debtor's case.

ORDER DENYING MOTION FOR LEAVE - 1

advisement. Based on the record, and for the reasons set forth below, the Court denies the Motion.

## I.    Background

The parties dispute the facts and procedural history leading up to this proceeding. However, the relevant history is as follows:

LLS America, LLC, (the "Debtor") filed the above-captioned case on July 21, 2009. (*See* ECF No. 1) On November 24, 2009, the Pontons filed Proof of Claim 567-1 for a general unsecured claim in the amount of $143,003. (*See* Claim 567) The basis of the claim was "money loaned." (*See* Proof of Claim, 567-1) The proof of claim listed a Trenton New Jersey address. (*See* Proof of Claim, 567-1)

On April 21, 2011, Mr. Kriegman was appointed the Chapter 11 Trustee. (ECF Nos. 350, 365) Mr. Kriegman's appointment stemmed, in part, from the findings of the examiner appointed in this case. (ECF Nos. 119, 157-163, 168) These findings indicated that the Debtor, and its related entities, had served as instruments of a Ponzi Scheme. (*See* ECF Nos. 182, 240, 306, 991) As Trustee, Mr. Kriegman was tasked with, among other things, identifying and, as appropriate, pursuing legal actions for monetary recoveries from the many investors who reaped the fruits of the scheme ("Net Winners") to the detriment of many other investors ("Net Losers"). (ECF No. 2309, p. 3) With Court approval, Mr. Kriegman, as Trustee, retained the law firm of Witherspoon Kelley as litigation counsel. (*See* ECF No. 422) With the Trustee's authorization, Witherspoon Kelley, on behalf of the chapter 11 bankruptcy estate (the "Estate"), filed over 226 lawsuits to pursue recoveries from the Net Winners for redistribution to the Net Losers (the "Claw Back Litigation"). (*See* ECF Nos. 422, 459-669)

On October 25, 2012, while the Estate pursued the Claw Back Litigation, the Court entered an order confirming the amended chapter 11 plan (the "Confirmed

Plan") and trust agreement, which established the liquidating trust (the "Trust") and Mr. Kriegman's appointment as the Trustee. (*See* ECF Nos. 1364, 1403) Under the terms of the Confirmed Plan, all assets of the Estate, including claims and causes of action, were transferred into the Trust. (*See* ECF Nos. 1364, 1403, 2309)

On July 16, 2011, as part of the Claw Back litigation, Witherspoon Kelley filed an adversary proceeding against the Pontons (the "Avoidance Action"). (ECF No. 2309, p. 4) The Pontons were duly served with process at the Trenton, New Jersey location listed as their address in their proof of claim. (ECF No. 2309, p. 4) The Avoidance Action sought to avoid and recover fraudulent transfers, totaling over $117,000.00, which were made to the Pontons for their investments connected with the Ponzi scheme. (ECF No. 2309, p. 4) The Pontons, pro se, filed their answer denying the allegations. (ECF No. 2309, p. 5) Before discovery could take place, the reference for the Avoidance Action, as well as multiple other avoidance actions, was withdrawn for purposes of trial to the U.S. District Court for the Eastern District of Washington and consolidated into case 12-CV-668-RMP.

The Pontons failed to appear at the trial. (ECF No. 2309, ex. C) On May 12, 2015, the U.S. District Court for the Eastern District of Washington entered its findings of fact and conclusions of law regarding the Pontons and other defendants. (ECF No. 2309, ex. C) The court found, based on the evidence, that the Pontons had failed to satisfy "the objective standard of good faith" and concluded that they "[were] required to return the entire amount of the transfers that they received, including principal, interest, and commissions." (ECF No. 2309, ex. C) On June 16, 2015, the District Court entered a judgment in favor of the Trust against the Pontons for $120,671, plus post-judgment interest (the "Judgment"). (ECF No. 2309, ex. D)

ORDER DENYING MOTION FOR LEAVE - 3

Sometime in 2020, pursuant to the Trustee's authority under the Confirmed Plan and Trust Agreement (*See* ECF Nos. 1364, 1403, 2309, p.8), the Trustee retained the services of the Seattle law firm Green & Norwood to assist with the "due diligence" process of investigating, evaluating, and, if appropriate, pursuing collection judgments that warranted enforcement activity. (ECF No. 2309, p.8) Based on this due diligence, it was decided that the Pontons' Judgment warranted enforcement activity. (ECF No. 2309, p.8) Green & Norwood determined that, under the Washington garnishment statute, a judgment creditor is authorized to garnish accounts by issuing a writ of garnishment. (ECF No. 2309, pp. 8-9) Green & Norwood identified JP Morgan Chase Bank, N.A., ("Chase") as a bank in which the Pontons might have funds on deposit subject to garnishment. (ECF No. 2309, pp. 8-9) The Trustee authorized Green & Norwood to register the Judgment in King County Superior Court by filing an application for a writ of garnishment. (ECF No. 2309, ex. I) Chase answered the writ of garnishment. (ECF No. 2309, p.9)

The Pontons subsequently removed the garnishment action to the U.S. District Court for the Western District of Washington at Seattle ("Seattle District Court") (case no. C22-307RSM) on diversity grounds. (ECF No. 2314, ex. A, dkt. no. 1) Witherspoon Kelley served as counsel for the Trust in the garnishment proceedings. (ECF No. 2314, ex. A, dkt nos. 20-21, 26)

On March 17, 2022, the Pontons filed a motion for a temporary restraining order to enjoin Chase from turning over the funds to the Trustee (the "TRO"). (ECF No. 2314, ex. A, dkt. no. 6) The Seattle District Court, finding that the Pontons had failed to meet the requisite showing, denied the TRO motion. (ECF No. 2314, ex. A, dkt. no. 15) Upon denial of their TRO motion, the Pontons filed a motion to quash the writ of garnishment. (ECF No. 2314, ex, A, dkt. no. 18) The Seattle District Court denied the Pontons' motion to quash, finding the actions of

ORDER DENYING MOTION FOR LEAVE - 4

the Trustee and Green & Norwood complied with the garnishment statutes. (ECF No. 2314, ex. A, dkt. no. 28) Following this order, the Trustee filed a motion for an order granting the garnishment and releasing the funds. (ECF No. 2314, ex. A, dkt. no. 30) The Pontons moved the Seattle District Court for an order certifying the jurisdictional issue "as to the situs of intangible assets under RCW 6.27.080" to the Washington Supreme Court. (ECF No. 2314, ex. A, dkt. nos. 32, 39) Shortly thereafter, the Pontons also filed two successive motions for reconsideration of the order denying their motion to quash; the Seattle District Court denied both motions. (ECF No. 2314, ex. A, dkt. nos. 36-38, 43) On October 20, 2022, the Seattle District Court granted the Pontons' motion to certify the jurisdictional issue to Washington Supreme Court. (ECF No. 2314, ex. A, dkt. no. 44)

On October 27, 2022, the Trustee filed a motion to dismiss the garnishment proceeding, vacate the order freezing accounts, and withdraw certification to the supreme court; the Pontons opposed the motion. (ECF No. 2314, ex. A, dkt. nos. 48-54) The Seattle District Court granted the Trustee's motion, and on November 29, 2022, entered a judgment dismissing the garnishment proceeding with prejudice, vacating the order freezing accounts, and withdrawing certification. (ECF No. 2314, ex. A, dkt. no. 55)

The Pontons then filed a motion for attorney fees, seeking, pursuant to RCW 6.27.230,[2] $97,516.25 in fees and $1,215.64 in costs. (ECF No. 2314, ex. A, dkt. no. 58)[3] While their motion for attorney fees was pending, the Pontons filed the Motion currently before the Court. (ECF No. 2298)

---

[2] RCW 6.27.230 provides, that where the answer in a garnishment proceeding is controverted, the costs of the proceeding, including reasonable compensation for attorney's fees, shall be awarded to the prevailing party.

[3] The Seattle District Court denied the Pontons' Motion, noting "Defendants have not shown they were the prevailing party in this action. Their motions were largely denied. Whatever relief they were seeking, they did not obtain it, other than to prolong the expense of this litigation." (ECF No. 2314, ex. A, dkt. no.

ORDER DENYING MOTION FOR LEAVE - 5

## II. The *Barton* Doctrine is a Jurisdictional Rule Restraining Subject Matter Jurisdiction.

The *Barton* doctrine is a common law jurisdictional rule that, in certain circumstances, restrains subject matter jurisdiction. *See Barton v. Barbour*, 104 U.S. 126, 26 L. Ed. 672 (1881). The *Barton* doctrine was established by the Supreme Court over a century ago and provides that, before suit can be brought against a court-appointed receiver, leave of the court by which he was appointed must be obtained. *Barton*, 104 U.S. at 127. Court approval is necessary, the *Barton* court reasoned, to ensure a consistent and equitable administration of the receivership property. *See* 104 U.S. at 128-129. Under the *Barton* doctrine, failure to obtain leave from the appointing court, prior to filing a lawsuit against the receiver, necessarily stripped the non-appointing court of subject matter jurisdiction over that lawsuit. 104 U.S. at 128–129.

In 2005, in *In re Crown Vantage, Inc.*, the Ninth Circuit formally extended the *Barton* doctrine to bankruptcy proceedings. 421 F.3d 963, 970 (9th Cir. 2005) (noting "the doctrine was first recognized by our Bankruptcy Appellate Panel in *In re Kashani*, 190 B.R. 875, 883–85 (B.A.P. 9th Cir. 1995)"). The *Crown Vantage* court explained,

> [T]he policies underlying the *Barton* doctrine apply with greater force to bankruptcy proceedings than to other proceedings involving receivers. The filing of a bankruptcy petition creates a bankruptcy estate, consisting of all of the debtor's legal or equitable interests in property wherever located and by whomever held. Thus, the district court in which the bankruptcy case is commenced obtains exclusive in rem jurisdiction over all of the property in the estate. The court's exercise of in rem bankruptcy jurisdiction essentially creates a fiction that the property -- regardless of actual location -- is legally located within the jurisdictional boundaries of the district in which the court

---

65) The Pontons have appealed to the Ninth Circuit Court of Appeals; the appeal is pending. (ECF No. 2314, ex. A, dkt. no. 66)

ORDER DENYING MOTION FOR LEAVE - 6

sits. Thus, the jurisdiction of the bankruptcy court exceeds that of any other court-appointed receiver. The requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate be brought either in bankruptcy court or with leave of the bankruptcy court.

421 F.3d at 971 (internal formatting, citations, and quotations omitted).

### III. The *Barton* Doctrine is Applicable to This Case and Protects the Acts of the Trustee and His Attorneys.

Since the *Barton* doctrine applies in bankruptcy proceedings, the first matter the Court must address is, whether the *Barton* doctrine is equally applicable in post-confirmation chapter 11 cases involving a liquidating trust and liquidating trustee, and, if so, the scope of its applicability.

#### a. The Barton Doctrine Applies in Post-Confirmation Chapter 11 Cases and to Post-Confirmation Liquidating Trustees.

As set forth by the Ninth Circuit, the *Barton* doctrine applies in bankruptcy, because the bankruptcy trustee "is a statutory successor to the equity receiver, and just like the equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." *In re Crown Vantage, Inc.*, 421 F.3d at 971 (quoting *Matter of Linton*, 136 F.3d 544, 546 (7th Cir. 1998) (internal quotation omitted). *In re Crown Vantage, Inc.*, further extended the *Barton* doctrine to post-confirmation chapter 11 cases and post-confirmation liquidating trustees. 421 F.3d at 973 (explaining "as part of a liquidating Chapter 11 reorganization proceeding, the bankruptcy court chose the mechanism of a liquidating trust to liquidate and distribute the assets of the estate . . . [i]n this context, the Liquidating Trustee is the functional equivalent of the bankruptcy trustee and is entitled to *Barton* protection."). Moreover, the *Barton* doctrine remains applicable even after the bankruptcy case has been closed and the assets

ORDER DENYING MOTION FOR LEAVE - 7

are no longer in the trustee's hands. *Id.* at 972. Thus, in this case, the fact that the bankruptcy assets are being liquidated through the vehicle of a liquidating trust with an appointed liquidating trustee does not prevent the application of the *Barton* doctrine.

### b.    The Barton Doctrine Protects the Trustee's Attorneys.

The Court next considers the scope of the *Barton* doctrine's applicability in this case. More specifically, if the doctrine is applicable to the Trustee's attorneys, Witherspoon Kelley and Green & Norwood.

"[C]ourt appointed officers who represent the estate are the functional equivalent of a trustee." *Id.* at 973. The Pontons acknowledge that the *Barton* doctrine has been extended to liquidating trustees and to court-appointed attorneys; they assert, however, that "Green & Norwood are not court-approved attorneys to which the *Barton* doctrine applies." (ECF No. 2298, p. 1) The Pontons, citing *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (B.A.P. 9th Cir. 1989), argue that "attorneys hired by [l]iquidating [t]rustees that have not been supervised by the bankruptcy court have never been given *Barton* [d]octrine protection." (ECF No. 2313, p. 3) However, *Balboa* makes no such assertion and does not support the Pontons' argument.[4] Moreover, the Pontons' pincite, which provides "[i]t is well

---

[4] In *In re Balboa Improvements, Ltd.*, 99 B.R. 966, a chapter 11 debtor allegedly entered into a contract with a professional, agreeing to pay the professional a fee for procuring a refinancing package or buyer for debtor's real property. The contract was not disclosed to or approved by the bankruptcy court. The bankruptcy case was subsequently converted from Chapter 11 to Chapter 7 and debtor's property was sold at foreclosure. The professional brought an adversary action against debtor's attorney, seeking damages alleging interference with prospective economic advantage, fraud, interference with contract, negligence, malpractice, and detriment to the estate. The bankruptcy court dismissed for lack of subject matter jurisdiction over the claims. The panel reversed, concluding that the proceeding could result in a determination of whether the estate had been improperly administered or whether the plaintiff was entitled to professional fees or commissions. Such claims, the court found, were core under either 28 U.S.C. § 157(b)(2)(A) or (O). It further concluded that the bankruptcy court would have jurisdiction over any related claims, either as related proceedings under 28 U.S.C. § 1334(c)(2) or under the doctrine of pendent jurisdiction.

ORDER DENYING MOTION FOR LEAVE - 8

settled that such fiduciary cannot be sued in state court without leave of the bankruptcy court for acts done in his official capacity and within his authority as an officer of the court," more aptly supports an argument contrary to that asserted by the Pontons.[5]

The Pontons' argument is likely premised on the misconception that the term "court-appointed professional" includes only those professionals authorized by court order under 11 U.S.C. § 327. Indeed, prior to confirmation in a chapter 11 bankruptcy case, the employment and compensation of professionals is governed by the bankruptcy code. 11 U.S.C. § 327. However, upon confirmation, the terms of the plan govern. 11 U.S.C. § 1141; *see Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 589 (9th Cir. 1993). Here, the terms of the Confirmed Plan explicitly provide that "[t]he Liquidating Trustee may retain, without application to, or further order of the Bankruptcy Court, such law firms . . . as it may deem necessary, in its discretion . . . to aid in the performance of its responsibilities." (ECF No. 1364, art. IV.B.1(d)) Therefore, both Witherspoon Kelley, retained by the Trustee as litigation counsel for the Trust pursuant to Court order (*See* ECF No. 440) and Green & Norwood, retained pursuant to the Trustee's authority as conferred under the Confirmed Plan to enforce the Judgement for benefit of the Trust, are court-appointed officers who represent the estate.

Based on the above, the Court finds that the *Barton* doctrine is applicable to this post-confirmation chapter 11 bankruptcy case and its protection reaches the acts of not only the Trustee but those of His Attorneys.[6] The Court now considers whether leave under the doctrine is appropriate in this case.

---

[5] *In re Balboa Improvements, Ltd.*, 99 B.R. at 970.

[6] The term "His Attorneys" shall hereinafter mean Witherspoon Kelley and Green & Norwood.

ORDER DENYING MOTION FOR LEAVE - 9

## IV. Analysis of the *Kashani* Factors Favors Denial of Leave.

Whether to grant or deny leave for a party to sue the trustee is within the sound discretion of the bankruptcy court. *In re Crown Vantage, Inc.*, 421 F.3d at 973, n. 6 ("the question of whether a foreign action affects the bankruptcy estate is an issue committed to the discretion of the bankruptcy court"). In exercising this discretion, a bankruptcy court's analysis is "guided by consideration of the factors identified in *Kashani*." These factors, as set forth in *Kashani*, include:

1. Whether the acts or transactions relate to the carrying on of the business connected with the property of the bankruptcy estate and if the limited exception of 28 U.S.C. § 959(a) is applicable.

2. If approval from the appointing court appears necessary, do the claims stem from actions related to administering the estate?

3. Do the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity?

4. Are the movants or proposed plaintiffs seeking to surcharge the trustee; that is, seeking a judgment against the trustee personally?

5. Do the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct?

*In re Kashani*, 190 B.R. 875, 886–87 (B.A.P. 9th Cir. 1995). The existence of "one or more of these factors may be a basis for the bankruptcy court to retain jurisdiction over the claims." *In re Crown Vantage, Inc.*, 421 F.3d at 976–977 (quoting *In re Kashani*, 190 B.R. at 887). Relevant to the Court's inquiry are the second and third *Kashani* factors.

ORDER DENYING MOTION FOR LEAVE - 10

### a. Factor Two: The Claims Pertain to Actions of the Trustee and His Attorneys While Administering the Trust.[7]

"The touchstone of the *Barton* inquiry is whether a suit challenges acts done in a trustee's official capacity and within his authority as an officer of the Court." *In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1094 (9th Cir. 2016) (citing *In re Crown Vantage, Inc.*, 421 F.3d at 970–71) (internal quotations omitted). "A suit against a bankruptcy court officer for actions undertaken in his official capacity necessarily stems from the bankruptcy itself." *In re Yellowstone Mountain Club, LLC*, 841 F.3d at 1097 (citations and internal quotations omitted). The Pontons summarily dismiss the second factor, asserting that it does not apply "since the Trustee was not . . . administering the property of the bankruptcy estate." (ECF No. 2298, p. 8) Neither the Motion nor the Complaint explains why the recovery of fraudulent transfers is not "administering property of the bankruptcy estate."

Contrary to the Pontons' assertions, and as articulated above, administering property of the bankruptcy estate includes actions taken by a liquidating trustee for the benefit of, and in adherence to, the trust. *See In re Crown Vantage, Inc.*, 421 F.3d at 973. Here, the Pontons' claims center on the collection actions taken by the Trustee and His Attorneys. Collection actions by which the Trustee and His Attorneys sought, through the garnishment process, to enforce the Judgment against the Pontons for the benefit of the Trust. Thus, because the claims pertain to the actions of the Trustee and His Attorneys, done in their official capacities and

---

[7] This Court begins its analysis with factor two because the first factor, which provides a limited statutory exception to the *Barton* doctrine, codified at 28 U.S.C. § 959(a), is, as acknowledged by the Pontons, not applicable here. (ECF No. 2298, p. 8). Additionally, the Court need not consider the fourth factor in its analysis as the Pontons "are not making a claim against the Trustee in his individual capacity." (ECF No. 2298, p. 8-9). Finally, because the Pontons do not assert that they are beneficiaries of the Trust to whom the Trustee owed fiduciary duties, the fifth factor is not relevant to the Court's analysis.

within their authority while administering the Trust, the second *Kashani* factor weighs in favor of denying leave.

      **b.    Factor Three: The Trustee and His Attorneys Are Entitled to Derived Quasi-Judicial Immunity.**

      The third factor considers whether the actions the suit challenges are entitled to quasi-judicial immunity. *See In re Kashani*, 190 B.R. at 887 Judges are entitled to absolute judicial immunity for acts performed in their official capacity. *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002), *as amended* (Sept. 6, 2002) (citations and internal quotations omitted).

> Judicial immunity is a sweeping form of immunity for acts performed by judges that relate to the judicial process . . . insulat[ing] judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives, or when the exercise of judicial authority is flawed by the commission of grave procedural errors.

*Id.* (citations and internal quotations omitted).

      Absolute judicial immunity extends to nonjudicial officers who perform functions closely associated with the judicial process. *Id.* at 948 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985). "The Supreme Court has recognized that individuals, when performing functions that are judicial in nature, or who have a sufficiently close nexus to the adjudicative process, are entitled to a grant of absolute quasi-judicial immunity." *Id.* The Ninth Circuit recognizes bankruptcy trustees as such individuals – "bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order." *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009) (quoting *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989) (internal quotations omitted)).

The protection afforded by quasi-judicial immunity additionally extends to those acting as the functional equivalent of the bankruptcy trustee. *In re Harris*, 590 F.3d at 742. This includes trustee's counsel. *Benton v. Cory*, No. 2:10-CV-00907-RLH, 2010 WL 5056018, at *5 (D. Nev. Dec. 3, 2010), *aff'd*, 474 F. App'x 622 (9th Cir. 2012) ("as a matter of law, the trustee's counsel is the functional equivalent of a trustee where they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."). Moreover, the Ninth Circuit has held that court-appointed officers who represent the estate are the functional equivalent to the trustee, and as such, are entitled to quasi-judicial immunity for actions within that function. *In re Harris*, 590 F.3d at 742–744; *see also In re Crown Vantage, Inc.*, 421 F.3d at 973.

For derived quasi-judicial immunity to attach, a court must find that (1) the acts were within the scope of authority, (2) the debtor had notice of the proposed acts, (3) the proposed acts were candidly disclosed to the bankruptcy court, and (4) the bankruptcy court approved of the acts (the "*Bennett* Test"). *Bennett*, 892 F.2d at 823–825, slightly reframed by *In re Harris*, 590 F.3d at 742–744. Scope of authority focuses on whether the acts at issue were authorized by statute or court order. *Id.* at 742. In evaluating scope of authority, a court's analysis focuses on the "ultimate act rather than the constituent parts of the act." *In re Castillo*, 297 F.3d at 952–953 (individual negligence in forgetting to send out proper notice by trustee was part of the ultimate act of scheduling and notice of hearing authority of Judge, thus entitled to quasi-judicial immunity); *see also In re Cedar Funding, Inc.*, 419 B.R. 807, 821–823 (B.A.P. 9th Cir. 2009) (individual libel and slander by the trustee was part of the ultimate act of communicating with creditors, thus entitled to quasi-judicial immunity). *Harris* is guiding in this analysis.

*In re Harris*, the debtor filed a voluntary chapter 7 bankruptcy case, and a trustee was appointed. 590 F.3d at 734. The Trustee subsequently assigned an

ORDER DENYING MOTION FOR LEAVE - 13

unsecured creditor the right to prosecute an adversary proceeding against Harris and his wife for fraudulent conveyances. *Id.* at 734–35. The unsecured creditor was given 68% of the net recovery, plus attorney fees and costs. *Id.* at 735–36. Three years later, the debtor sued the trustee, the unsecured creditor, and their attorneys in state court, alleging breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and constructive fraud. *Id.* at 736. The case was removed to bankruptcy court and the defendants moved to dismiss under quasi-judicial immunity. *Id.* at 734. The bankruptcy and district courts agreed with the defendants, and the Ninth Circuit affirmed. In discussing scope of authority, the *Harris* court found that the defendants' claims against the estate for costs and fees associated with the fraudulent conveyance proceeding arose from the ultimate act of administering the estate; and that their authority to take such acts derived from the assignment agreement entered into with the trustee, whose authority to enter into such agreements derived from the order of the bankruptcy court. *See id.* at 743–744. Thus, under *Harris*, derived quasi-judicial immunity protects agents of the trustee for acts that are functionally equivalent to a trustee's acts.

The Pontons first argue that Green & Norwood are not entitled to derived quasi-judicial authority because they were not court-appointed. (ECF No. 2298, p. 8) Next, the Pontons argue that the Trustee and Witherspoon Kelley acted outside the scope of their authority by engaging in intentional tortious collection activities and are therefore not entitled to derived quasi-judicial immunity for those acts. (ECF No. 2298, p. 8) Both arguments fail.

As to Green & Norwood, the Pontons again too narrowly define "court-appointed/court-approved attorneys."[8] As discussed, *see supra* Section III,

---

[8] For purposes of the *Barton* doctrine and quasi-judicial immunity, the distinction between "court-appointed" and "court-approved" is "irrelevant." *See Carter v. Rodgers*, 220 F.3d 1249, 1252 n.4 (11th Cir. 2000).

ORDER DENYING MOTION FOR LEAVE - 14

subsection b, the terms of the Confirmed Plan explicitly authorized the Trustee to retain professionals, such as Green & Norwood. (ECF No. 1364, art. IV.B.1(d)) This authority was conferred by the Court through its Confirmation Order. (*See* ECF Nos. 1364, 1403) This is sufficient to satisfy the "court-appointed officer" standard under which Green & Norwood would be entitled to derived quasi-judicial authority. Hence, the Trustee and His Attorneys are entitled to derived quasi-judicial immunity for actions taken within the Trustee's scope of authority.[9]

The Trustee and His Attorneys satisfy the *Bennett* test. The Confirmation Order explicitly provides that the Trustee "shall have the right to pursue avoidance actions." (ECF No. 1403, p. 23, para. 15) Here, pursuing avoidance actions on behalf of the Trust was the ultimate act. Thus, actions taken by the Trustee and His Attorneys in furtherance of that act are within the scope of authority. As evidenced by the long history in this case, the Debtor and the Pontons had notice of the avoidance actions. The Court's knowledge and approval of the avoidance actions are evidenced throughout the bankruptcy case docket. Hence, each of the four elements of the *Bennett* test is satisfied. Based on the foregoing, the Court could find that the collection activities of the Trustee and His Attorneys, even if done with an improper motive, are entitled to derived quasi-judicial immunity.[10] As such, this factor favors denying leave.

The Court has determined that Witherspoon Kelley and Green & Norwood were acting as the functional equivalent of the Trustee and their actions were

---

[9] As the Liquidating Trustee, Mr. Kriegman is the functional equivalent of a bankruptcy trustee and is therefore entitled to derived quasi-judicial immunity for actions taken within the scope of authority of his authority. Additionally, as the court-approved attorney for the trustee, Witherspoon Kelley is entitled to derived quasi-judicial immunity for actions taken within the scope of the Trustee's authority.

[10] As further discussed in Section V, the Pontons have failed to substantiate their allegations of wrongdoing against the Trustee and His Attorneys. Nevertheless, at this time, the Court need not make a conclusive determination on this issue.

ORDER DENYING MOTION FOR LEAVE - 15

within the Trustee's scope of authority. Additionally, the Trustee, Witherspoon Kelley, and Green & Norwood are likely entitled to quasi-judicial immunity for such actions. Therefore, contrary to the Pontons' assertions, the application of the relevant *Kashani* factors supports enjoining the Pontons from litigating in another court pursuant to the *Barton* doctrine. The Court now reviews whether the Pontons can establish a prima facie case for each of their claims.

## V.     The Burden of Clearly Identifying the Pontons' Claims and Disentangling Their Arguments Does Not Rest with the Court.

In order to make an independent determination of whether to grant leave to sue, the bankruptcy court must be able to evaluate the claims that are being asserted. *In re Kashani*, 190 B.R. at 885. Accordingly, "[b]efore such leave may be granted, the prospective plaintiffs must set forth a prima facie case against the trustee." *Id.* In evaluating a plaintiff's prima facie case, the bankruptcy court evaluates whether the prospective plaintiffs have clearly articulated their claims and shown adequate grounds to support those claims. *See Id.* This showing may be made either through a detailed motion or in a proposed complaint. *Id.* at 889.

In their Motion, the Pontons make generalized allegations of wrongdoing against the Trustee and His Attorneys and then direct this Court, and the Trustee, to the Complaint. However, contrary to the Pontons' assertion, the Complaint is not well-pled. (ECF Nos. 2298, p. 5, 2298-1)

Fed. R. Civ. P. 8(a)(2) requires a complaint to be a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted "short and plain statement" to mean that the complaint must provide "the defendant [with] fair notice of what the . . . claim is and the *grounds upon which it rests*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47

ORDER DENYING MOTION FOR LEAVE - 16

(1957) (emphasis added). Violation of the short and plain requirement can occur when a party pleads multiple counts and does not identify which specific facts fit that specific count, but instead relies on blanket incorporation. *See e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1177–1180 (9th Cir. 1996) (not short and plain when plaintiff complaint is argumentative, prolix, replete with redundancy, and largely irrelevant); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (not short and plain when plaintiff's complaint including attachments exceeded 70 pages in length, were confusing and conclusory); *Schmidt v. Herrmann*, 614 F.2d 1221, 1223–1224 (9th Cir. 1980) (not short and plain when plaintiff's complaint was 30 pages without distinguishing the cause of action and was confusing, distracting, ambiguous, and unintelligible . . . in presentation) (quotations omitted).

The Pontons Complaint is not short and plain. The Complaint pleads multiple counts against multiple parties but often does not identify specifically who is liable and which specific facts fit that specific count. The Complaint relies heavily on incorporation and proxy clauses creating redundancy and causing confusion. Adding to this are the Complaint's numerical inconsistencies and multiple scrivener's errors, including names of individuals unrelated to this case. In support of their case, the Pontons filed, in addition to their Motion (ECF No. 2298), a Complaint (ECF No. 2298-1), a Reply (ECF No. 2313), a Declaration (ECF No. 2314), and over 240 pages of exhibits, which included the hyperlinked docket to case 2:22-cv-00307.[11] The volume of documents filed combined with the Pontons' lack of specificity, confusing redundancy, and multiple errors, forces this Court to engage in a treasure hunt to find which facts line up with which violations. The burden of clearly identifying the claims alleged and disentangling

---

[11] Garnishment Proceedings, United States District Court for the Western District of Washington, Seattle.

arguments in support thereof should not lie with the defendants or the courts, as it has in this matter. It is an unduly burdensome task for this Court.

## VI. The Pontons Fail to Make a Prima Facie Case Against the Trustee or His Attorneys.

The Pontons seek leave to sue the Trustee, and His Attorneys, alleging two separate causes of action. The first, under the Washington Consumer Protection Act, for alleged violations of the Washington Collection Agency Act. The second, a claim of abuse of process. However, before leave to sue may be obtained, the Pontons must be able to plead the elements of a prima facie case against the trustee. *In re Kashani*, 190 B.R. at 885 (citing *Anderson v. United States*, 520 F.2d 1027, 1029 (5th Cir. 1975) (citing *In re Nat'l Molding Co.*, 230 F.2d 69, 71 (3d Cir. 1956)); *see also In re Gen. Carriers Corp.*, 258 B.R. 181, 187 (B.A.P. 9th Cir. 2001). Failure to establish a prima facie case precludes this Court from granting leave.

### a. The Pontons fail to make a prima facie case for claims based on the Washington Consumer Protection Act.

The Pontons first allege a cause of action under the Washington Consumer Protection Act, arguing that the collection actions of Witherspoon Kelley and Green & Norwood were in contravention of the Washington Collection Agency Act, which constitutes a per se violation of the Washington Consumer Protection Act, and additionally, that such collection activities are unfair and deceptive practices occurring in trade or commerce. (*See* ECF Nos. 2298, 2298-1, 2313, 2314)

The Washington Consumer Protection Act (the "WCPA") prohibits unfair or deceptive acts in trade or commerce. RCW 19.86.020. To establish a violation under the WCPA, the moving party must prove five elements: (1) an unfair or

ORDER DENYING MOTION FOR LEAVE - 18

deceptive act or practice; that (2) occurs in trade or commerce; (3) impacts the public interest; (4) causes injury to the plaintiff in his business or property; and (5) the injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986). All five elements must be established. *Id.*

> (i)    The Pontons fail to establish a per se violation because Witherspoon Kelley and Green & Norwood are not collection agencies as defined by the statute.

The first two elements of a WCPA violation may be established "by a showing that the alleged act constitutes a per se unfair trade or practice." *Id.* at 785–786. The Washington Supreme Court has held that violations of the Washington Collection Agency Act (the "WCAA") constitute a per se violation of the WCPA. RCW 19.16.440; *see also Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 204 P.3d 885, 897 (2009) (en banc) ("When a violation of debt collection regulations occurs, it constitutes a per se violation of the [W]CPA . . . ."). To prevail on the basis of a per se violation, plaintiffs must show (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect. *Walcker v. SN Com., LLC*, 286 F. App'x 455, 456 (9th Cir. 2008).

The WCAA applies to and regulates the actions of collection agencies, *see* RCW 19.16 *et. seq.*, and requires those acting as a collection agency (or an out-of-state collection agency) to obtain a license. *See* RCW 19.16.110;[12] 19.16.260.[13]

---

[12] RCW 19.16.110, in relevant part, provides: "[n]o person shall act, assume to act, or advertise as a collection agency or out-of-state collection agency as defined in this chapter, except as authorized by this chapter, without first having applied for and obtained a license from the director."

[13] RCW 19.16.260 makes the possession of a license a prerequisite to any collection suit by a collection agency.

Licensed collection agencies are then prohibited from certain practices. *See* RCW 19.16.250. The Pontons first allege that both Witherspoon Kelley and Green & Norwood acted as unlicensed collection agencies and that their conduct in bringing and maintaining garnishment actions violated RCW 19.16.110, 19.16.250(15), (16), and (21), and 19.16.260 of the WCAA. (ECF No. 2298-1, p. 13) It is undisputed that neither the Trustee nor His Attorneys are licensed as debt collection agencies. What is disputed is whether their actions required them to be. In other words, because the WCAA unambiguously requires all persons acting as a collection agency to be licensed as such, the Court must determine whether Witherspoon Kelley and Green & Norwood are collection agencies as defined by the statute.

Under the statute, a "Collection Agency" means "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person . . ." RCW 19.16.100(4)(a). However, the statute explicitly excludes from the definition "[a]ny person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to . . . lawyers." RCW 19.16.100(5)(c). Despite this carveout, the WCAA does not categorically exclude lawyers and law firms from the definition of a collection agency. *Mandelas v. Gordon*, 785 F. Supp. 2d 951, 960–61 (W.D. Wash. 2011) (citing *Carter v. Suttell & Assocs., PS*, 159 Wash. App. 1045 (2011) (Wash. Ct. App.) (unpublished decision). Instead, the court determines whether a firm falls under that definition by examining the law firm's primary purpose. *Scott v. Am. Express Nat'l Bank*, 22 Wash. App. 2d 258, 269, 514 P.3d 695, 702, *review denied,* 200 Wash. 2d 1021, 520 P.3d 976 (2022) (citing *Heintz v. Jenkins*, 514 U.S. 291, 294–99, 115 S. Ct. 1489, 131 L. Ed. 2d 395

ORDER DENYING MOTION FOR LEAVE - 20

(1995). If a law firm's primary purpose is debt collection, it may qualify as a collection agency under the WCAA. *Mandelas*, 785 F. Supp. 2d at 960–962.

While it is clear that some lawyers may fall within the definition of collection agency, the question is, at what point is a law firm's primary purpose the collection of debts? Relevant cases have had varied interpretations and differing outcomes.[14] After reviewing these cases, the Court concludes the collection of debts becomes a law firm's primary purpose when the primary objective of the business is debt collection, and the attorney is merely the means to achieve that objective. Conversely, when the collection of a debt is incidental to the lawyer's business, such conduct is protected by the exemption. *Carter* and *Mandelas* elucidate this distinction.

In *Carter*, the court considered whether a law firm's representation of a client in a garnishment action, which sought payment of a judgment entered against the plaintiff, met the definition of collection agency under the WCAA. *Carter*, 159 Wash. App. 1045. There, the law firm had engaged in collection actions such as pursuing payment on behalf of the client, filing a complaint and obtaining a judgment for the amount owed, sending the plaintiff letters encouraging him to pay the judgment or be subject to garnishment, and filing applications for writs of garnishment and supporting declarations. *Id.* Although the law firm had engaged in collection action and collection litigation, the court concluded that such action, on its own, did not render the law firm a collection agency under the WCAA. *Id.* ("But, to hold that merely engaging in litigation

---

[14] *Lang v. Gordon*, No. C10-819RSL, 2011 WL 62141 (W.D. Wash. Jan. 6, 2011); *McLain v. Daniel N. Gordon, PC*, No. C09-5362BHS, 2010 U.S. Dist. LEXIS 86794, 2010 WL 3340528, at *8 (W.D. Wash. Aug. 24, 2010); *LeClair v. Suttell & Assocs., P.S.*, No. C09-1047-JCC, 2010 WL 417418 (W.D. Wash. Jan. 29, 2010); *Semper v. JBC Legal Grp.*, No. C04-2240L, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005); *Motherway v. Daniel N. Gordon*, PC, No. C09-5605RBL, 2010 U.S. Dist. LEXIS 71340, 2010 WL 2803052, at *4-*5 (W.D. Wash. Jul. 15, 2010).

related to the collection of debts on behalf of a client meets the statutory definition would essentially render every law firm taking part in collection litigation a collection agency. Such a result is not what the statute compels.") (internal quotations omitted). The court found that the plaintiff failed to present any specific facts, aside from its own assertions, and concluded that the law firm "represented its client in the practice of law . . . it was not acting as a collection agency." *Id.* at 8.[15]

The *Mandelas* court reached the opposite conclusion, finding sufficient evidence on the record to support a determination that the law firm's primary business was the collection of consumer debts. 785 F. Supp. 2d at 961–62. Such evidence included proof that the law firm employed only two attorneys. *Id.* The other thirteen to eighteen employees were non-attorney collectors who worked in the collection department and attempted to collect debts from consumers before any efforts were made to file suit. *Id.* Hence, the carveout does not shield a law firm's collection activities when the primary purpose of the law firm is the collection of primary debts.

The record in this case establishes that in bringing and maintaining garnishment actions and filing suit to defend such actions, Witherspoon Kelley and Green & Norwood engaged in collection actions. However, as discussed, merely establishing that a lawyer engaged in collection actions is insufficient to establish liability under the WCAA. The Court finds that the Pontons have failed to allege any specific facts to support a finding that the primary purpose of Witherspoon Kelley and Green & Norwood is debt collection. As such, the WCAA does not apply and there is no basis for violation of RCW 19.16.110 or RCW 19.16.260.

---

[15] Moreover, as a matter of public record, this Court is familiar with the law practice of many attorneys who have practiced at Witherspoon Kelley and is aware that their primary business practice is not the collection of debts.

ORDER DENYING MOTION FOR LEAVE - 22

        *(ii)*      *The Pontons fail to establish a per se violation because*
                    *Witherspoon Kelley and Green & Norwood are not licensees or*
                    *employees of licensees to which the statute's prohibitions apply.*

The Pontons also claim three additional violations of the WCAA under RCW 19.16.250. First, they allege Green & Norwood violated RCW 19.16.250(15) and RCW 19.16.250(21) by impermissibly including fees and costs to the amount of the Judgment in the Application for Writ Garnishment. (ECF No. 2298-1, pp. 10, 11, 12) Next, they allege that Green & Norwood violated RCW 19.16.250(16) by falsely implying that it had the authority to garnish the Pontons, falsely obtaining a writ of garnishment, and by taking action to carry out such garnishment. (ECF No. 2298-1, pp. 10, 11, 12) Finally, the Pontons allege that in defending and continuing the actions Green & Norwood initiated, Witherspoon Kelley also violated RCW 19.16.250(15), RCW 19.16.250(16), and RCW 19.16.250(21). The Pontons' allegations are without merit.

The WCAA prohibits licensees and their employees from engaging in certain debt collection practices. RCW 19.16.250;[16] *see also Panag*, 166 Wash. 2d at 53–54. The plain language of the WCAA provides that RCW 19.16.250 applies to licensees or employees of licensees.  RCW 19.16.250 ("No licensee or employee of a licensee shall . . . ."); RCW 19.16.440 ("[T]he commission by a licensee or an employee of a licensee of an act or practice prohibited by RCW 19.16.250 [is] declared to be [an] unfair act[] or practice[] . . . for the purpose of the application

---

[16] RCW 19.16.250(15) prohibits a licensee or employee of a licensee from communicating with the debtor and representing or implying that the existing obligation of the debtor may be or has been increased by the addition of attorney fees, investigation fees, service fees, or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation of such debtor.
RCW 19.16.250(16) prohibits a licensee or employee of a licensee from threatening to take any action against the debtor which the licensee cannot legally take at the time the threat is made.
And RCW 19.16.250(21) prohibits a licensee or employee of a licensee from collecting or attempting to collect in addition to the principal amount of a claim any sum other than allowable interest, collection costs, or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs.

ORDER DENYING MOTION FOR LEAVE - 23

of the [CPA]."). *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1113 (W.D. Wash. 2012). Hence, even if the Pontons had established that Witherspoon Kelley and Green & Norwood engaged in the conduct prohibited under RCW 19.16.250, because Witherspoon Kelley and Green & Norwood are not licensees or employees of licensees, they are precluded from liability under these provisions. Based on the plain language, the Court concludes that Witherspoon Kelley and Green & Norwood cannot be held liable under these provisions of the WCAA. The Pontons have not established a violation under RCW 19.16.110, 19.16.250, or 19.16.260. Accordingly, their cause of action under the WCPA based on a per se violation fails.

> (iii)  *The Alleged Collection Actions Do Not Constitute Unfair or Deceptive Acts and Are Not Related to the Entrepreneurial Aspects of the Practice of Law.*

As the Pontons have failed to demonstrate a per se violation, in order to make a prima facie case under the WCPA, they must independently establish all five elements. As recited earlier, a WCPA claim requires the plaintiff to prove (1) an unfair or deceptive act or practice; that (2) occurs in trade or commerce; (3) impacts the public interest (4) causes injury to the plaintiff in his business or property; and (5) the injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc.*, 105 Wash. 2d at 780. The first two elements may be established by showing that (1) an act or practice has the capacity to deceive a substantial portion of the public and (2) has occurred in the conduct of any trade or commerce. *Id.* at 785–786.

The first element of a WCPA claim has two distinct parts; the plaintiff must show that an act or practice is both (1) unfair or deceptive, and (2) had the capacity to deceive a substantial portion of the public. *Young v. Toyota Motor Sales, U.S.A.*, 196 Wash. 2d 310, 317, 472 P.3d 990, 994 (2020) ("[T]he plaintiff must establish

the alleged unfair or deceptive act or practice *had the capacity to deceive a substantial portion of the public*.) (emphasis added). Whether an act had the capacity to deceive a substantial portion of the public is a separate showing from the third element, which requires a showing that the unfair or deceptive act impacts the public interest. *See Hangman Ridge Training Stables, Inc.*, 105 Wash. 2d at 785.

The second element of a WCPA claim requires that the act or practice occurs in the conduct of trade or commerce. *Hangman Ridge Training Stables, Inc.*, 105 Wash. 2d at 780. "The provision of legal services does not generally fall within the definition of trade or commerce, except as those services relate to the entrepreneurial aspects of the practice of law. *Eriks v. Denver*, 118 Wash. 2d 451, 463–64, 824 P.2d 1207, 1214 (1992) (citing *Short v. Demopolis*, 103 Wash. 2d 52, 60–61, 691 P.2d 163 (1984) (internal quotations omitted). "The entrepreneurial aspects of [the] legal practice are those related to how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients" *Id.* Claims for malpractice and negligence are not subject to the CPA, since those claims go to the competence and strategy of lawyers, and not to the entrepreneurial aspects of practice. *Id.*

The Pontons argue that "the acts taken by Green & Norwood and Witherspoon Kelley against the Pontons and their [p]roperty are intentional acts designed to generate and increase profitability in the form of attorney fees and litigation costs, which relate to the entrepreneurial aspects of [the] practice of law." (ECF No. 2298-1, p. 12) This argument suffers from multiple defects.

First, the claim contains redundant allegations; however, their redundancy is not obvious. The Pontons refer to the lawyers' "intentional acts" but do not specify which of the alleged acts support this claim. (ECF No. 2298-1, p. 12) The Pontons then allege that these unspecified "intentional acts" relate to the entrepreneurial

ORDER DENYING MOTION FOR LEAVE - 25

aspects of the practice of law and resemble the act of a lawyer padding his bills; however, the Pontons do not explain the resemblance, nor do they provide any legal citation to support the assertion.[17] (ECF No. 2298-1, p. 13) Moreover, entirely missing from the claim, is any reference as to whether the alleged acts had the capacity to deceive a substantial portion of the public.

The Pontons' other argument, that the acts of preparing, signing, and sending writs of garnishment and notices to the garnishee regarding the Pontons' accounts is conduct occurring in trade or commerce, fares no better. (ECF No 2298-1, p. 13) The Pontons seem to suggest that Witherspoon Kelley and Green & Norwood improperly added costs and fees to the Application for Writ and that doing so was an entrepreneurial act. However, the Court is not persuaded.

In general, such actions are required under the Washington garnishment statute, which governs the enforcement of obligations . . . *See* RCW 6.27.005. In preparing, signing, and sending writs of garnishment and notices to the garnishee regarding the Pontons' accounts, Witherspoon Kelley and Green & Norwood sought to collect the Judgment entered against the Pontons for the benefit of the Trust. The actions taken by Witherspoon Kelley and Green & Norwood were done through the judicial process in the performance of legal services. *See Carter*, 159 Wash. App. 1045 *(*"merely obtaining fees, either through the judicial process or the process of billing a client, for the services rendered does not convert those services

---

[17] As noted by the Trustee (ECF No. 2308, p. 14, n. 19) the Pontons appear to be referencing *Rhodes v. Rains*, 195 Wash. App. 235, 244, 381 P.3d 58, 63 (2016). In *Rhodes*, 195 Wash. App. 235, the plaintiff was a former client who accused her attorney of using deceptive billing methods to pad the bills. *Id.* There, the plaintiff had signed a retainer agreement, "which clearly stated $415 as the rate for a Senior Attorney;" however, the court found that there was a question as to whether the attorney had exaggerated the number of hours worked and as to whether the retainer agreement may have misled the plaintiff into thinking that part of the work would be assigned to an Associate Attorney at $275 per hour. Because the plaintiff produced evidence that the [attorney] padded the bill [and established] an inference that [the attorney] did not even prepare the bill until called on to produce it in litigation more than a year after performance of the services itemized, the Rhodes court held that the plaintiff's allegation of unfair and deceptive billing was actionable under the WCPA. *Rhodes* is distinguishable.

ORDER DENYING MOTION FOR LEAVE - 26

into entrepreneurial actions."); *Michael v. Mosquera-Lacy*, 165 Wash. 2d 595, 595, 200 P.3d 695 (2009); *Short*, 103 Wash. 2d at 61 (explaining that the CPA has no application to the performance of legal services). Moreover, the fees and costs assessed by Witherspoon Kelley and Green & Norwood were provided for in the Judgement and statutorily authorized, provided proper notice, under the garnishment statute.[18] Therefore, based on the record before the Court, the Pontons have failed to establish that the collection activities relate to the entrepreneurial aspects of the practice of law.

A WCPA claim requires a plaintiff to establish all five elements. The Pontons have failed to show that the Trustee's and His Attorneys engaged in an unfair or deceptive act or practice occurring in the conduct of trade or commerce and therefore, the Court need not address the remaining three elements.

Based on the foregoing, the Court finds that the Pontons have failed to make a prima facie case, as required by *Kashani*, for a cause of action under the WCPA.

**b.**    **The Pontons fail to make a prima facie case for abuse of process.**

The Court turns next to the Pontons' second cause of action, abuse of process. To prevail on an abuse of process claim, the claimant must prove (1) an ulterior purpose to accomplish an object not within the proper scope of the process; (2) an act not proper in the regular prosecution of proceedings; and (3) harm proximately caused by the abuse of process. *Bellevue Farm Owners Ass'n v. Stevens*, 198 Wash. App. 464, 477, 394 P.3d 1018, 1024 (2017). Where the claimant seeks damages for attorney fees and costs incurred as a result of abuse of process, such damages are an additional element that the claimant must prove, and the fact finder must determine. *Id*. However, "[t]he mere institution of a legal

---

[18] As noted by the Trustee, the Pontons seem to misunderstand the applicability and requirements of the garnishment statute, leading to numerous incorrect conclusions.

ORDER DENYING MOTION FOR LEAVE - 27

proceeding even with a malicious motive does not constitute an abuse of process."
*Fite v. Lee*, 11 Wash. App. 21, 27–28, 521 P.2d 964, 968 (1974). "[T]here must be
an act after filing suit using legal process empowered by that suit to accomplish an
end not within the purview of the suit." *Sea-Pac Co. v. United Food & Com.
Workers Loc. Union 44*, 103 Wash. 2d 800, 806–807, 699 P.2d 217, 220 (1985)
(quoting *Batten v. Abrams*, 28 Wash. App. 737, 748, 626 P.2d 984 (1981). Because
of this, "[a]buse of process claims are exceptionally rare." *Maytown Sand &
Gravel, LLC v. Thurston Cnty.*, 191 Wash. 2d 392, 423 P.3d 223 (2018), *as
amended* (Oct. 1, 2018), and *abrogated by Yim v. City of Seattle*, 194 Wash. 2d
682, 451 P.3d 694 (2019) (explaining "that an abuse of process claim could not lie
even if the jury found the writ was pursued with malice and for an improper
purpose because if the writ had been rightfully issued, its service upon the
[plaintiff's] bank would have been rightful.")

The Pontons premise their abuse of process claim on allegations that the
Trustee and His Attorneys violated the Washington garnishment statute, RCW 6.27
*et. seq.*,[19] and "can be liable for tortious use of the legal process so long as a
plaintiff can prove the elements of malicious prosecution or malicious use of the
legal system."[20] (ECF No. 2313, p. 4) In their Motion, the Pontons recite three of
the elements required in an abuse of process claim. (ECF No. 2298, p. 5) Then, as
with their WCPA claim, the Motion states that "each of the elements are spelled

---

[19] The Pontons have failed to set forth specific facts as to each element of an abuse of process claim,
therefore, the Court does not need to reach whether the Trustee and His Attorneys engaged in tortious
conduct in violation of the garnishment statute. However, a review of the record, including the District
Court's Order Denying the Pontons' Motion to Quash Writ, wherein the court, after finding that the
Trustee's "exercise of in rem jurisdiction did not violate due process," concluded that the "statute does not
appear to have been violated," does not support a finding that the Trustee unreasonably interpreted the
garnishment statute, including RCW 6.27.080, or that the actions of the Trustee, or His Attorneys, equate
to an abuse of process.

[20] As an aside, the Pontons seemingly conflate abuse of process and malicious prosecution here.

ORDER DENYING MOTION FOR LEAVE - 28

out in the Complaint." (ECF No. 2298, p. 6) However, an examination of the Complaint reveals that this is an inaccurate and misleading representation. The Complaint fails to individually address the elements of an abuse of process claim. Instead, the Complaint provides, "Plaintiffs re-allege and incorporate all previous paragraphs herein." (ECF No. 2298-1, p. 13) Such an incorporation statement is insufficient to establish a prima facie case.

In a final attempt to bolster their argument of intentional wrongdoing, the Pontons make the following assertion:

> Winners don't forfeit the race right before crossing the finish line. Creditors who have collected a judgment legally don't petition a court for voluntary nonsuit with prejudice when they believe they are going to win a case. People can and do go about getting what they believe is theirs the wrong way. Kriegman[] [and] Green & Norwood did just that when they decided to forgo the simple filing of a foreign judgment in the state of Alabama where the Pontons lived and filed it where Kriegman lived instead.

(ECF No. 2313, p. 1)

The insinuation of this unsubstantiated assertion is not well taken by the Court.[21] Moreover, such conclusions only reveal the Pontons' fundamental misunderstanding of the bankruptcy process and the role of the Trustee.[22] Accordingly, the Court finds the Pontons have failed to meet their burden as to the abuse of process cause of action.

---

[21] Moreover, the Court is troubled by Ms. Springs' barely veiled accusations of bias made against the District Court. The Court cautions Ms. Springs', as such unsubstantiated allegations may be sanctionable under Fed. R. Civ. P. 11.

[22] The record does not support a finding that the Trustee unreasonably interpreted the garnishment statute, including RCW 6.27.080, or that his act or the act of His Attorneys rise to abuse of process. In its order Denying the Pontons' Motion to Quash Writ, the District Court for the Western District of Washington, Seattle examined RCW 6.27.080 and the actions of the Trustee. In finding that the "exercise of in rem jurisdiction did not violate due process," the District Court concluded that the "statute does not appear to have been violated by [the Trustee]. (ECF No. 2309-12, p.5)

## VI.    Balancing of the Interests

If the Court finds a prima facie case, it must then consider the potential effect of a judgment against the trustee and the debtor's estate, which requires a balancing of the interests of all parties involved and consideration of whether another tribunal may have more expertise regarding the issues in the proposed suit. *In re Kashani*, 190 B.R. at 886–87. Because the Pontons have failed to set forth a prima facie case for either cause of action, the Court need not address the balancing of interest test. *Id.* at 885–86. Nevertheless, the Court finds that, upon balancing the interests of all parties and considering the breadth and complexity of the underlying bankruptcy case, the balancing of the interests test favors denying leave.

## VII.   Conclusion

The Court has determined the *Barton* doctrine is applicable and that its protection reaches the acts of not only the Trustee but those of Witherspoon Kelley and Green & Norwood. The *Barton* doctrine requires, at a minimum, that a party seeking to sue a trustee in another forum make a prima facie case that its claim is not without foundation. The Pontons have not achieved that standard with respect to any of their claims. While this alone is sufficient to deny the Pontons' Motion, the *Kashani* factors provide additional grounds to deny. Accordingly, the Pontons Motion for Leave (ECF No. 2298) is denied.

*///END OF ORDER///*